IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18 CV 175

| | | |
|---|---|---|
| RONALD WAYNE SPANN, | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM |
| | ) | AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| FRANK PERRY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Robert L. Uhren, Jr. M.D.'s Motion to Dismiss Plaintiff's Complaint (Doc. 24), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully considered the arguments, the record, and applicable authority, the undersigned respectfully recommends that the Motion be granted in part and denied in part.

I.  Relevant Procedural Background

Plaintiff is incarcerated at Mountain View Correctional Institution ("MVCI") in Spruce Pine, North Carolina.

On April 13, 2017, a complaint was filed on Plaintiff's behalf by attorney Mary March Exum asserting claims pursuant to 42 U.S.C. §1983 against a number of defendants, including Dr. Uhren ("Spann I"). Case No. 1:17-cv-104.

The Spann I litigation was dismissed by order of the District Court on March 13, 2018 ("March 13 Order"). The dismissal of Spann I was expressly ordered as being without prejudice as to refiling within one year.

Approximately three months later, on June 21, 2018, Plaintiff filed the instant case, this time appearing *pro se*. (Doc. 1). Plaintiff also filed a Motion for Appointment of Counsel (Doc. 2).

On July 5, 2018, Plaintiff filed a motion to proceed in forma pauperis (Doc. 4) and an additional Motion to Appoint Counsel (Doc. 7).

On July 13, 2018, Plaintiff's motion to proceed in forma pauperis was granted and his motions to appoint counsel were denied. (Docs. 8, 9).

Plaintiff filed another Motion Requesting Appointment of Counsel (Doc. 12) on July 18, 2018, which was also denied. (Doc. 13).

On September 17, 2018, Dr. Uhren filed the instant Motion to Dismiss (Doc. 24) and a supporting memorandum (Doc. 25). The same day, Dr. Uhren also filed his Answer (Doc. 26).

On September 19, 2018, an order was entered advising Plaintiff of the filing of Dr. Uhren's Motion to Dismiss and making him aware of his opportunity to respond and the time allowed for doing so. (Doc. 27).

On September 24, 2018, Plaintiff filed another Motion to Appoint Counsel (Doc. 28). That Motion was denied on October 10, 2018. (Doc. 29).

2

The remaining Defendants filed their Answer on October 26, 2018. (Doc. 31).

## II. Relevant Factual Background

Plaintiff's Complaint, which is comprised of 217 paragraphs, includes the following allegations:

Defendant Norma Melton is the head nurse at MVCI, Defendant Jamie Grindstaff is the First Shift Lead Nurse, and Dr. Uhren is a gynecologist from Black Mountain, North Carolina who works at MVCI one day per week. Complaint (Doc. 1) at ¶¶ 10 – 12.

Prior to Plaintiff's incarceration, the Social Security Administration found him to be totally disabled based on his osteoarthritis and allied disorders and mental disorders. Id. at ¶ 14.

Plaintiff arrived at MVCI on July 10, 2011. Id. at ¶ 20. Upon arrival, Plaintiff was sent to the medical unit for an evaluation. Id. at ¶ 22. During that evaluation, Dr. Uhren advised Plaintiff that the Social Security Administration's disability determination had no impact over his evaluation or treatment. Id. at ¶ 23.

Although Plaintiff had previously been prescribed both Percocet and Flexiril for many years before arriving at MVCI, Dr. Uhren placed Plaintiff on Tylenol or Ibuprofen to manage pain. Id. at ¶ 24.

3

Plaintiff describes numerous issues related to his medical care including the following:

- X-rays of Plaintiff's back were taken in 2012 and after reading those x-rays Dr. Uhren informed Plaintiff he did not have severe back problems and did not need back surgery. (Id. at ¶¶ 25 – 26)

- Following three separate sick call requests, Plaintiff was finally seen by Dr. Uhren, was prescribed Tylenol and Ibuprofen, and was informed that if he was not better in four weeks his prescription for Neurontin would be increased, but that Dr. Uhren allowed the prescription to expire. (Id. at ¶ 28)

- In or around February 2015, Plaintiff was sent to Valdese Hospital for hernia surgery, and that "the medical staff" had waited so long to send Plaintiff for such surgery his hernia had migrated, requiring the insertion of wire mesh in his groin which still gives him problems. (Id. at ¶¶ 50 – 51)

- Since February 2015, Plaintiff has been confined to a wheelchair, which he alleges is due in part to the negligence of Defendants. (Id. at ¶ 17).

- In June 2015, Plaintiff was sent to see an orthopedic surgeon with regard to his back pain, this being four years following his initial notice to staff at MVCI of his back pain and three years after Dr.

Uhren had informed Plaintiff that he did not have severe back problems and did not need back surgery. (Id. at ¶¶ 53 – 55)

- In November 2015, Plaintiff was sent to Valdese Hospital for extensive MRIs which revealed a very large cyst attached to his spinal cord as well as severe sciatic nerve damage and the enlargement of certain spinal discs (Id. at ¶ 57)

- Upon information and belief, Plaintiff's medications were deliberately withheld by medical staff and/or stolen by staff at MVCI. (Id. at ¶ 96)

- On February 9, 2016, Plaintiff was taken to Duke Medical Center and advised by a surgeon that he would need immediate surgery to remove a large cyst on his spine, and that a nerve test was ordered due to numbness in Plaintiff's legs. (Id. at ¶ 97)

- On March 14, 2016, Plaintiff collapsed in his cell and, the next day, filed a "medical emergency" but was not permitted to see anyone "in medical." (Id. at ¶¶ 110 – 111)

- On June 17, 2016, Plaintiff was transported to Duke Medical Center to see a surgeon. During the transport his ankles were chained and he was shackled with a bar on his wrists and also strapped to the wheel of his wheelchair. He was not allowed food, water, or restroom breaks during the transport and, by the time he saw the doctor, had gone over 7 ½ hours with no food or water. On the return trip, he was

similarly denied food, water, and restroom breaks. (Id. at ¶¶ 117 – 122)

- Plaintiff was returned to Duke Hospital on June 29, 2016 for back surgery. He alleges that due to the negligence of "defendants", the cyst on his spine had grown to such an extent that the procedure took 8 hours instead of the anticipated time of 4 ½ hours. Plaintiff subsequently spent five days in the intensive care unit following his surgery. (Id. at ¶¶ 124 – 126)

### III. Legal Standard

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192. The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.

The complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual

6

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The mere possibility that a defendant acted unlawfully is not enough for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

Federal courts extend latitude to the pleadings of *pro se* litigants. See e.g., Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (noting that *pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers").

IV. Discussion

Plaintiff's Complaint contains two (2) claims for relief pursuant to 42 U.S.C. §1983. Plaintiff's first claim is asserted "against all defendants." Doc. 1 at 32. His second claim is purportedly made against Defendants other than Dr. Uhren but as the text of that claim also references Dr. Uhren, the undersigned views it as being directed against Dr. Uhren as well. Id. at 35 – 37.

In response, Dr. Uhren argues that: 1) Plaintiff's claims are barred by the statute of limitations to the extent they involve medical care that occurred more than three years prior to the filing of the instant Complaint; 2) Plaintiff

7

has failed to state a constitutional claim for deliberate indifference; 3) Dr. Uhren is entitled to qualified immunity; 4) Plaintiff's official capacity claims for compensatory and punitive damages are barred by the Eleventh Amendment; 5) Plaintiff's allegations do not support an award of punitive damages otherwise; 6) Plaintiff has failed to plead a state law medical malpractice claim. Doc. 25 at 9 – 25.

### A. Official Capacity Claims

Plaintiff's Complaint states that each defendant is being sued "individually and in his or her official capacity." Doc. 1 at ¶ 13.

Plaintiff alleges that Dr. Uhren is a gynecologist from Black Mountain, North Carolina who comes to MVCI one day per week and he identifies Dr. Uhren as "Physician MCVI." Plaintiff does not provide further details regarding Dr. Uhren's employment relationship with MVCI, but Plaintiff's allegations clearly indicate Dr. Uhren was working on behalf of MVCI.

When acting in their official capacities, employees of a state are not "persons" for purposes of 42 U.S.C. §1983. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983.").

Therefore, the undersigned will recommend that Plaintiff's claims for compensatory and punitive damages against Dr. Uhren in his official capacity be dismissed.

## B. Individual Capacity Claims

### 1. Statute of Limitations

The statute of limitations for § 1983 claims follows the statute of limitations for personal injury claims in the state where the alleged violations occurred. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). "In North Carolina, the statute of limitations for actions under 42 U.S.C.1983 (2000) is three years." Fayemi v. Offerman, 99 F. App'x 480, 481 (4th Cir. 2004) (citing Love v. Alamance County Bd. of Educ., 757 F.2d 1504, 1506 (4th Cir.1985)).

State tolling provisions are also used by federal courts in § 1983 cases. Estate of Cox by & through Cox v. McDonald, 2018 WL 3594999, at *2 (W.D.N.C. July 25, 2018). In that regard, Rule 41(b) of the North Carolina Rules of Civil Procedure states in part as follows:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this section ... operates as an adjudication upon the merits. If the court specifies that the dismissal of an action commenced within the time prescribed therefor, or any claim therein, is without prejudice, it may also specify in its order that a new action based on the same claim may be commenced within one year or less after such dismissal.

N.C.G.S. § 1A–1, Rule 41(b).

Here, Plaintiff's original action, Spann I, was filed on April 13, 2017 and was later dismissed by the March 13 Order.

The March 13 Order stated expressly that the action was being dismissed without prejudice as to refiling within one year. In addition, there is no question that Plaintiff's current action was filed within that one-year time period; the instant action was commenced on June 21, 2018, approximately three months after the dismissal of Spann I in mid-March 2018.

Dr. Uhren argues nonetheless that the applicable statute of limitations period runs from three years prior to the filing of Plaintiff's current Complaint, not three years prior to the filing of Plaintiff's Complaint in Spann I. In support, Dr. Uhren suggests that the language of the March 13 Order allows room for his current argument and he cites to the District Court's statements that "whatever claims [Plaintiff] may have had are now a year older and may be subject to the running of the statute of limitations…" and that "[i]t is arguable that this action is a complete nullity as far as plaintiff's legal interests." Doc. 25 at 10.

It is not apparent to the undersigned, however, that such an interpretation was intended.[1] The District Court stated plainly that its

---

[1] The full paragraph states: "Having made that determination, the Court's primary concern is now with protecting the legal interests of the putative plaintiff, Mr. Spann. This is not to say that defendants have not been harmed, because they certainly have been harmed through wasted time and expense. It appears, however, that Mr. Spann may well have been harmed insofar as whatever claims he may have are now nearly a year older and may be subject to the running of statutes of limitation. Further, adverse decisions were made against claims asserted on his behalf in an action where he was not represented. Whether those decisions will have any res judicata impact in a subsequent action remains to be seen. It is arguable that this action is a complete

"primary concern is now with protecting the legal interests of the putative plaintiff, Mr. Spann" and that "since more than a year has transpired, the Court is concerned that the statute of limitations may well have run as to claims plaintiff may have." March 13 Order at 4.

Beyond the District Court's intent, Dr. Uhren argues that the March 13 Order did not have the effect of preserving Plaintiff's limitations period as tracked from the original filing date in Spann I. Dr. Uhren contends that while the March 13 Order "would have preserved April 13, 2014 as the statute of limitations date if Spann I had been properly filed," since Spann I was improperly brought, it could not have tolled the limitations period, the upshot being that Plaintiff's current claims may only be based on events occurring after June 21, 2015 (three years prior to the filing of his instant Complaint). Doc. 25 at 4.

Missing from Dr. Uhren's argument, however, is a discussion of how his previous position on the issue should impact the analysis. At the closing hearing in Spann I, "when asked what the Court should do, Defendant Uhren argued that a dismissal of the action without prejudice would forestall the running of any statute of limitation for one year. The Court then took a recess

---

nullity as far as plaintiff's legal interests. However, since more than a year has transpired, the Court is concerned that the statute of limitations may well have run as to claims plaintiff may have." March 13 Order at 4.

11

and asked defense counsel over that break to either find the Court a citation for that proposition or, if she could not, to seek permission from her client to stipulate to such an extension. Due to being unable to bring her computer in the building, counsel was unable to access Westlaw; fortunately, the Court was able to find authority over the break which provided that a dismissal without prejudice in federal court carried with it a one year grace period for refiling under state law." March 13 Order at 4-5.

Dr. Uhren's position is now directly contrary – that the dismissal of Spann I without prejudice did not toll the limitations period for a year.

The Fourth Circuit recently described the doctrine of judicial estoppel as follows:

> As the Supreme Court has explained, judicial estoppel is an equitable doctrine, designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. Typically, judicial estoppel is reserved for cases where the party to be estopped . . .has taken a later position that is clearly inconsistent with her earlier one; has persuaded a court to adopt the earlier position, creating a perception that either the first or the second court was misled; and would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Finally . . .there is the longstanding principle that judicial estoppel applies only when the party who is

12

> alleged to be estopped intentionally misled the court to gain unfair advantage, and not when a party's prior position was based on inadvertence or mistake.

Martineau v. Wier, 2019 WL 3772151, at *6 (4th Cir. Aug. 12, 2019) (internal quotations and citations omitted)

The undersigned does not suggest or imply that Dr. Uhren intentionally misled the District Court to gain an unfair advantage. Given, however, Dr. Uhren's position during the closing hearing in Spann I, the District Court's reliance on that argument, Dr. Uhren's current arguments in this case, and the overall facts and circumstances, the undersigned believes that further development of the record, including additional information regarding the basis for the change in Dr. Uhren's position, is necessary before the issuance of a ruling on the merits of this issue.

Therefore, the undersigned will recommend that Dr. Uhren's Motion be denied to the extent it seeks the dismissal of Plaintiff's claims based on events that occurred prior to June 21, 2015. See Martineau v. Wier, 2019 WL 3772151, at *7 (4th Cir. Aug. 12, 2019) (use of equitable doctrine of judicial estoppel determined on basis of case-specific factual context).[2]

---

[2] Dr. Uhren also references North Carolina's continuing course of treatment exception to the three-year statute of limitations in medical malpractice actions. However, as discussed below, any claim for medical negligence that Plaintiff may have attempted to bring is subject to dismissal. Further, it appears that North Carolina courts have not extended the doctrine beyond medical malpractice cases. DePalma v. Roman Catholic Diocese of Raleigh, 167 N.C. App. 370, 605 S.E.2d 267 (2004).

13

### 2. Deliberate Indifference, Qualified Immunity, and Punitive Damages

Under the Eighth Amendment, a prisoner has a right to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103 (1976). To prove a violation of that right, a plaintiff must show that the alleged deprivation was sufficiently serious and that the defendant had a sufficiently culpable state of mind. Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it". Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle, 429 U.S. at 105-06)

Similarly, a § 1983 plaintiff seeking punitive damages must establish that the defendant's conduct involved "reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). "The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on [a] § 1983 claim." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987).

A qualified immunity analysis contains two steps - a determination of "whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the officer's conduct violated the plaintiff's constitutional right," and, if so, "whether the right at issue was 'clearly established' at the time of the officer's conduct." Wilson v. Prince George's Cty.,

Md., 893 F.3d 213, 219 (4th Cir. 2018) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Here, Plaintiff's Complaint sets forth a detailed history of Plaintiff's medical issues, the treatment (or alleged lack thereof) by Dr. Uhren and the medical staff at MVCI, and various grievances filed by Plaintiff. Many of Plaintiff's allegations do not pertain to Dr. Uhren, and some of those that are applicable to him do not rise to the level of deliberate indifference. Other allegations are more troubling, such as the alleged delay in the treatment of Plaintiff's known back problems.

Plaintiff's claims may well face a different fate at a later stage of this proceeding, but the undersigned does not conclude on the current record that Plaintiff's allegations are so deficient that they warrant dismissal at this time, particularly in view of Plaintiff's *pro se* status. The undersigned, therefore, will recommend that the Motion to Dismiss with regard to these issues be denied.

### 3. Potential Medical Malpractice Claim

Dr. Uhren's final argument is that, to the extent Plaintiff has attempted to allege a State law medical malpractice claim, such a claim should be dismissed, given Plaintiff's failure to submit an expert certification as required under Rule 9(j) of the North Carolina Rules of Civil Procedure.

"A Rule 9(j) certification must be filed in order to sustain a claim for medical malpractice in North Carolina." Sharp v. Miller, 2016 WL 2988984, at *2 (W.D.N.C. May 23, 2016).

Here, it is not clear whether Plaintiff has intended to assert a claim for medical negligence against Dr. Uhren; Plaintiff's Complaint ostensibly includes two claims, each made pursuant to 42 U.S.C. §1983, but it also includes references to negligence. Regardless, since a Rule 9(j) certification has not been included in the Complaint, any such claim is subject to dismissal, and the undersigned will so recommend.

### V. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant Uhren's Motion to Dismiss (Doc. 24):

1. Be **GRANTED** with respect to the following claims and that such claims be **DISMISSED:**

    a. Plaintiff's claims for compensatory and punitive damages against Dr. Uhren in his official capacity and

    b. Plaintiff's claims, if any, for medical malpractice against Dr. Uhren.

2. Be **DENIED** otherwise, subject to further development of the record.

Signed: August 31, 2019

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).